| | |
|---|---|
| R & E PETROLEUM, LLC, RAGHEB CHAAR, & ELSIE ARADI | NO. 22-CA-238 |
| | FIFTH CIRCUIT |
| VERSUS | COURT OF APPEAL |
| LKM CONVENIENCE, LLC & TOAN HYUNH | STATE OF LOUISIANA |

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 802-522, DIVISION "N"
HONORABLE STEPHEN D. ENRIGHT, JR., JUDGE PRESIDING

February 01, 2023

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Hans J. Liljeberg

**REVERSED AS TO PORTION OF JUDGMENT APPEALED;**
**REMANDED**
> **FHW**
> **SMC**
> **HJL**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLEE,
LKM CONVENIENCE, L.L.C.
    Steven M. Hannan
    Justin A. Caprera

COUNSEL FOR DEFENDANT/APPELLANT,
TOAN HYUNH
    Miles G. Trapolin

**WICKER, J.**

Defendant-lessor, Toan Huynh, seeks review of the trial court's denial of his cross-claim against defendant-lessee LKM Convenience, L.L.C. ("LKM"), for past due rental payments, penalties, late fees, interest, attorney fees, and costs. For the following reasons, we reverse the judgment insofar as it denied defendant-lessor's cross-claim for rent-related damages and remand to the trial court for calculation of damages and determination of attorney fees and costs.

## FACTUAL AND PROCEDURAL BACKGROUND

This litigation arises out of an August 1, 2015 Master Lease executed between property owner-lessor, Hyunh, and defendant-sublessor, LKM, for a property located at 1020 Bridge City Drive and operated as a convenience store and fuel station. After LKM executed the Master Lease, on July 12, 2016, LKM subleased the property to plaintiffs-sublessees, R&E Petroleum, L.L.C., Ragheb Chaar, and Elsie Aradi (sometimes hereinafter referred to collectively as "R&E") for an increased monthly rental payment. After significant water intrusion and termite issues arose, R&E filed suit against Huynh and LKM, contending that Huynh was responsible for necessary repairs to the property as set forth in the Master Lease, and seeking dissolution of the Sublease under La. C.C. art. 2719.[1] LKM answered the suit, alleging that the Sublease contained a waiver of warranty provision and further placed the duty of all repairs on sublessee R&E. LKM also filed a reconventional demand against R&E for past due rental payments and late fees, in addition to reasonable attorney fees and costs as provided for in the Sublease between the parties. Huynh filed a cross-claim against LKM[2], alleging that LKM breached the Master Lease by failing to make rental payments and

---

[1] R&E sought and received approval to deposit the monthly rental payments into the registry of the court pending the outcome of the litigation.

[2] The cross-claim also named Lenny Motwani, owner of LKM, individually. However, Motwani was never served and all claims against him individually have been dismissed. On appeal, Huynh does not complain of the judgment dismissing Motwani individually and, thus, that issue or portion of the judgment is not before this Court.

failing to enforce the terms of the Sublease between R&E and LKM. In his cross-claim against LKM, Huynh sought damages for past due rental payments, taxes, penalties, late fees, reimbursement for interior repairs made to the property, and attorney fees and costs.

The matter proceeded to a bench trial on December 13 and 14, 2021. At trial, the parties introduced into evidence the Master Lease and Sublease executed between the parties. The August 1, 2015 Master Lease executed between owner-lessor Hyunh and LKM, with a ten-year (120 month) term, provides that LKM pay a monthly rent of $5,250.00 for the first 12 months of the lease, with a $100 annual increment increase in addition to an annual inflation increase in rental payments throughout the term of the lease. The Master Lease further provides that LKM is responsible to repair or maintain the entirety of the leased premises, but that lessor Huynh "shall be responsible only to maintain the roof, foundations and outside walls." The Master Lease allows for LKM to sublet the leased premises with Huynh's written consent. The July 12, 2016 Sublease between R&E and LKM provides that R&E pay to LKM a monthly rental payment of $8,000.00 for the first three-year period of the Sublease, with incremental increases throughout the term of the Sublease.[3] The Sublease further includes a waiver of warranty provision and a provision providing that "[a]ll maintenance, repairs, and replacements which may be required to the Lease Premises …shall be the sole responsibility and expense of the Sublessee."[4]

At trial, Lenny Motwani, owner of LKM, testified that he is a businessman with a bachelor's degree and a background in real estate and retail business. He testified that he has been in the convenience store industry since 2008 and that he

---

[3] The original Sublease provided the Sublease's term as a month-to-month term. However, the parties subsequently executed an Amendment to the Sublease to define a fixed term, with the lease extending to July 31, 2025.
[4] The Sublease also provided that R&E would pay all property taxes due for the Leased Premises during the term of the Sublease.

subleases several properties in the area. He understood that his obligations under the Master Lease included paying the rent and maintaining the interior and exterior of the building. He acknowledged that he did not obtain Huynh's consent as required under the Master Lease before allowing R&E to sublease and occupy the property. He further testified that, under the Sublease with R&E, his only obligations were simply to collect rent and collect insurance payments with all maintenance and repair responsibilities to be borne by R&E. He testified that the last rental payment he received from R&E for the property was in July 2019.[5]

Pini Weinstein, Huynh's attorney and acting manager for the leased premises at 1020 Bridge City, testified that LKM indicated a desire to sublease the property beginning in 2016. Initially, Weinstein discouraged the owner-lessor, Huynh, from approving any sublease between LKM and R&E because he had concerns after reviewing the financial documentation R&E provided. At some point thereafter, Weinstein reviewed the proposed Sublease between LKM and R&E, which included a waiver of warranty provision and further placed all responsibility for maintenance and repairs on R&E. Weinstein testified that those restrictions in the Sublease "absolutely" factored into his recommendation to Huynh to accept R&E as a sublessee and was a determining factor in Huynh's ultimate decision to approve the Sublease despite concerns over R&E's finances.[6] Weinstein testified that Huynh has not received any monthly rental payments from LKM since August 2019.

---

[5] Motwani testified that he had not received rental payments since July 2019 or insurance reimbursements since December 2019. However, Motwani acknowledged that the parties had reached an agreement that the rental payments would be placed in the registry of the court pending resolution of the litigation.

[6] The testimony at trial reflects that, although the "Consent of Property Owner under Primary Lease" was signed as a separate document and dated June 22, 2016, Huynh's approval was not actually granted and the document was not signed until January 2018. An August 2, 2017 email from Chaar to Motwani and LKM's counsel indicates that Weinstein had instructed him that R&E was occupying the building illegally because the landlord had not consented to or approved the sublease at that time. The testimony of all parties appears to indicate that the "Consent of the Property Owner" document was not actually signed until January 2018.

Each party presented testimony and evidence concerning water intrusion and termite issues that arose during R&E's occupancy of the property through its sublease with LKM. Joseph Bosi, a senior project manager for Orleans Sheet Metal and Roofing, testified that he conducted a roof inspection at the 1020 Bridge City property and found nearly 40 deficiencies in the roof, which he opined caused the intermittent water intrusion.[7] He recommended that the roof be replaced and opined that it could not be repaired properly. Keith Gros, a roofer, testified that he did not suspect the water intrusion was caused by any roof deficiencies. Rather, Mr. Gros opined that the water intrusion through the ceiling was caused by "a water line that was leaking from the ice machine" and a leaking air-conditioning unit placed on top of the roof. Mr. Gros also observed significant termite damage during his inspection.[8]

On February 4, 2022, the trial court rendered its judgment dismissing Huynh's cross-claim against LKM, finding that Huynh's failure to make repairs pursuant to the Master Lease prevented Huynh from seeking past due rental payments under the Master Lease. The judgment further dismissed R&E's suit against LKM and Huynh, finding that R&E is not entitled to dissolution of the Sublease in light of the waiver of warranty provision and further considering the provision within the Sublease placing the duty for repairs of the leased premises on

---

[7] Video evidence of the water intrusion was also introduced into evidence.

[8] Huynh also introduced the testimony of Sean Laurent with Dynamic Construction and Development, Inc. Mr. Laurent testified that the owner of the property hired him to make some electrical, plumbing, and other interior repairs to the 1020 Bridge City property to bring the property to Code after the Parish issued citations. At trial, Weinstein testified that Huynh paid Dynamic Construction $25,245.48 for interior repairs in order to bring the property to comply with Jefferson Parish Code, which Huynh contends was LKM's responsibility under the Master Lease. He further testified that Huynh paid Terminix $1,352.00 to repair termite damage, which he also contends was LKM's responsibility under the Master Lease. On appeal, Huynh in his brief complains briefly of the cost for these interior repairs and termite damage, contending that such repairs are LKM's responsibility under the Master Lease. However, the trial court's denial of this reimbursement claim was not assigned as error on appeal, listed as an issue for review, or properly briefed with any specificity or authority and, thus, is not before this Court on appellate review. See Uniform Rules, Courts of Appeal, Rule 2-3; *Dean v. Southmark Const.*, 03-1051 (La. 7/6/04), 879 So.2d 112, 116; *Rubin v. Am. Ins. Co.*, 16-53 (La. App. 5 Cir. 5/19/16), 193 So.3d 408, 410.

R&E. The trial court judgment further sustained LKM's reconventional demand, finding that R&E was in default or breach of the Sublease and liable to LKM in the amount of $252,056.12 in past due rental payments and fees.[9]

## DISCUSSION

On appeal, Huynh contends that the trial court erred in finding that he is not entitled to past due rental payments and other rent-related damages under the Master Lease because of Huynh's failure to repair the alleged roof damage. We agree.[10]

Louisiana law provides that where a leased thing requires repairs or has been destroyed, the lessee has specific remedies available under the law. If during the lease the thing requires repair, and the lessor fails to perform his obligation to make necessary repairs within a reasonable time, the lessee has the option to (1) make the repairs and deduct the reasonable cost of repair from the rent due, or (2) terminate the lease and surrender the premises to the lessor. La. C.C. art. 2694; *727 Toulouse, L.L.C. v. Bistro at the Maison De Ville, L.L.C.*, 2012-1014 (La. App. 4 Cir. 8/21/13), 122 So.3d 1152, 1162, *writ denied*, 13-2414 (La. 1/10/14), 130 So.3d 327.[11] If the leased premises is partially lost or destroyed, or its use is substantially impaired, then the lessee may obtain a diminution of rent or dissolution of the lease, whichever is more appropriate under the circumstances. La. C.C. art. 2715.

Therefore, in this case, LKM as the lessee could have sought to dissolve the lease based on Huynh's alleged failure to perform necessary repairs. Alternatively,

---

[9] This portion of the February 4, 2022 judgment is the subject of a separate appeal in this Court, 22-CA-376.

[10] Huynh further assigns as error that the trial court "erred when it held that Huynh did not prove that LKM failed to pay its rent to him." A review of the judgment and reasons for judgment reflects that this assignment makes an incorrect conclusion, and that the trial judge did not determine that Huynh failed to prove that LKM did not make any rental payments from August 2019 to the time of trial. This assignment is without merit.

[11] First, although arguably R&E provided notice to Huynh of some issues or need for repairs, the record does not reflect that LKM notified Huynh in writing of the alleged necessary repairs, as is required under the Master Lease between the parties.

22-CA-238          5

LKM could have asserted that the property's use was substantially impaired due to the water intrusion issues and could have judicially sought a diminution of rent under La. C.C. art. 2715. LKM sought neither of these remedies. Rather, LKM maintained "possession" of the property through its sublessee, R&E, but ceased paying the monthly rental payment. This course of action—continuing to occupy a property but terminating any rent payments—is not permitted under Louisiana law. See *727 Toulouse, L.L.C. v. Bistro at the Maison De Ville, L.L.C.*, 12-1014 (La. App. 4 Cir. 8/21/13), 122 So.3d 1152, 1162, *writ denied*, 13-2414 (La. 1/10/14), 130 So.3d 327 (finding "lessee's unilateral decision to refuse to pay rent and remain in occupancy of the premises was an improper 'self-help' remedy").

Further, LKM proved no damages as a result of the alleged water intrusion or termites; rather, because the trial court ordered R&E to pay LKM all past due rental payments under the Sublease—which judgment this Court has affirmed on appeal in the companion case, 22-CA-376—LKM has sustained no damages. Moreover, LKM's "possession" of the property through R&E—considering that LKM's only responsibility under the Sublease was to collect rental payments and this Court has affirmed the trial court's award of past due rental payments to LKM—has not been disturbed.

Accordingly, we find that the trial court erred in holding that LKM was relieved of its obligation to pay rent to Huynh pursuant to the Master Lease between the parties. Upon review of the Master Lease and the record, we are unable to discern or calculate the damages due under the lease. We therefore remand this matter to the trial court for a calculation of rent-related damages under the Master Lease.

**REVERSED AS TO PORTION OF JUDGMENT APPEALED; REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **FEBRUARY 1, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-CA-238

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN D. ENRIGHT, JR. (DISTRICT JUDGE)
JUSTIN A. CAPRERA (APPELLEE)          STEVEN M. HANNAN (APPELLEE)          MILES G. TRAPOLIN (APPELLANT)

**MAILED**
JUSTIN E. ALSTERBERG (APPELLEE)          MERVATT F. ELJAOUHARI (APPELLEE)
ATTORNEY AT LAW                          ATTORNEY AT LAW
3914 CANAL STREET                        935 GRAVIER STREET
NEW ORLEANS, LA 70119                    SUITE 2020
                                         NEW ORLEANS, LA 70112